## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

**JOSEPH Z. WOMBLE,**

                                 Plaintiff,

v.                                                                      **Case No. 14-CV-385-JFH-SPS**

**JERRY CHRISMAN and**
**TOMMY SHARP,**

                                 Defendants.

## OPINION AND ORDER

Plaintiff appealed the Court's August 7, 2017, dismissal of this action [Dkt Nos. 78-80].

The Tenth Circuit Court of Appeals affirmed in part, reversed in part, and remanded for further

proceedings in *Womble v. Chrisman*, No. 17-7056, 770 F. App'x 918 (10th Cir. May 23, 2019)

[Dkt. No. 87]. At the direction of the Court, the remaining defendants, Jerry Chrisman, the warden

at Mack Alford Correctional Center ("MACC") and Tommy Sharp, the deputy warden

("Defendants"), filed a special report in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th

Cir. 1978) [Dkt. No. 91] and a motion for summary judgment [Dkt. No. 92]. Plaintiff, who is

represented by counsel, filed responses to the motion and the special report [Dkt. Nos. 101-102],

and the defendants filed a reply to the response [Dkt. No. 105].[1]

**Plaintiff's Claims**

Plaintiff's remaining claims against Defendants are that his rights under the Eighth

Amendment were violated by Defendants' failure to provide him adequate nutrition and their

---

[1] The Court takes judicial notice of the Oklahoma Department of Corrections Offender website at
https://okoffender.doc.ok.gov, pursuant to Fed. R. Evid. 201, which indicates Plaintiff has been
released from incarceration and is on probation. *See Triplet v. Franklin*, 365 F. App'x 86, 92,
2010 WL 409333, at *6 n.8 (10th Cir. Feb. 5, 2010)

failure to inadequately maintain bathroom and shower facilities which resulted in unhygienic conditions. *Womble*, 770 F. App'x at 921. The Tenth Circuit summarized Plaintiff's claims alleging food deprivation, inadequate nutrition, and inadequate maintenance of showers and bathrooms as follows:

> Beginning in May 2014, Messrs. Chrisman and Sharp ordered that food be rationed in response to a growing population of inmates. Mr. Womble was served very small portions, and "spoiled meat, fruit and milk . . . on a regular basis" resulting in stomach pain, digestive damage, vomiting, and weight loss. He lost 21 pounds between May 2014 and September 2015. At some point, Mr. Womble informed Mr. Chrisman, Mr. Sharp, and Donna Vitoski (the food service manager at MACC) of these problems but was told that they did not have the budget to fix the problems. According to Mr. Womble, Mr. Sharp said in June 2014, "[W]e will do nothing about the overcrowding, and you should be grateful you even get food."

*Id.* at 921-22 (internal citations omitted).

> The complaint alleges that Ms. Vitoski was ordered to ration food by Mr. Sharp and Mr. Chrisman starting in May 2014 and that Mr. Chrisman ordered Ms. Vitoski to divert funds from food to security. . . . Mr. Womble alleged that he informed Mr. Chrisman, Mr. Sharp, and Ms. Vitoski that "he was getting sick from the food because of the rationed food portions, the spoiled nature of the food and the infestation of cockroaches in the kitchen." Supp. R. 21. They responded that they did "not have the budget to fix these problems." Again, Mr. Womble alleged that he was continually served inadequate amounts of food, that he was served spoiled food on a regular basis, and that he became ill and lost 21 pounds between May 2014 and September 2015. . . . [T]he rationing lasted more than 16 months, he lost 21 pounds, and he suffered from stomach pain, digestive damage, and vomiting.

*Id.* at 923-24 (internal citations omitted).

> Mr. Womble's amended complaint alleges his housing unit had too few showers and toilets for the inmate population. Specifically, he says there were 11 working showers for 132 inmates, and Mr. Chrisman and Mr. Sharp refused to order nonfunctioning showers to be fixed. Mr. Womble claims that he fell and injured his head, and developed an ear infection when one of the showers flooded. Mr. Womble also alleges that there was often only one functioning bathroom available for 32 inmates in one portion of the dormitory in part because inmates were housed in cells once set aside as bathrooms. According to Mr. Womble, the inadequate facilities required him to hold bowel movements, exposed him to feces on two occasions, caused him to soil himself, and resulted in damage to his digestive system. Mr. Womble alleges he raised the issue with Mr. Chrisman and Mr. Sharp, but they ignored his complaint, stating: "[N]othing can be done. This is a

2

permanent situation, you'll just have to do your time."

*Id*. at 925 (internal citations and footnote omitted).

**Standard of Review for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants allege Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available

3

administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff ("RTS") within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. All medical grievances must be submitted to the facility correctional health services administration for resolution. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority ("ARA") or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. [Dkt. No. 91-6 at 6-9, 12-14].

In his response to the motion for summary judgment [Dkt. No. 101], Plaintiff alleges he exhausted the available administrative remedies for his Eighth Amendment claims to the extent there were any remedies. He further argues that Defendants should be barred from raising their exhaustion defense five years into this litigation. In support of this

4

assertion, Plaintiff cites *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018), however, that case does not concern exhaustion of administrative remedies under 42 U.S.C. § 1997e(a).   Therefore, the Court will proceed with the issue of exhaustion of administrative remedies.

The record shows that Plaintiff submitted ten RTSs, three grievances, and one appeal to the ARA during the time relevant to his claims.  The grievances and the ARA appeal were as follows:

**Grievance No. 14-15**:  On July 7, 2014, Plaintiff submitted a grievance raising claims of overcrowding and inadequate food service and requesting the release or transfer of inmates as a form of relief.  The grievance was returned unanswered for failure to include a corresponding RTS, as required by OP-09124(V)(A).  Plaintiff was advised that he was granted ten calendar days to properly submit the grievance, however, there is no indication he complied with these directions.  [Dkt. No. 91-13].

**Grievance No. 14-16:**  On July 11, 2014, Plaintiff filed a grievance concerning the non-response or late response to an RTS.  The grievance was returned unanswered with directions for grieving a non-response to an RTS.  [Dkt. No. 91-14].  Plaintiff apparently did not proceed with his exhaustion efforts for this grievance.

**Grievance No. 14-20:**  On July 8, 2014, Plaintiff submitted an RTS, raising a generalized claim of overcrowding and requesting transfer or release of excess inmates to correct law violations.  He stated that the multiple violations he had raised in an RTS on May 16 was not a claim of multiple issues, but rather "multiple violations falling under one issue."  The August 6, 2014, response stated, "You still have not told me what law

5

violations have occurred or what you want me to do.  Be specific and I will address your issue." [Dkt. No. 91-15 at 2].

On August 13, 2017, Plaintiff filed Grievance No. 14-20, complaining of overcrowding and seeking the release or transfer of excess inmates.  Plaintiff also claimed that the overcrowding was related to a lack of nutritious food, airflow, and a healthy environment.  The grievance was returned unanswered on August 15, 2014, because Plaintiff had not "addressed a specific issue through RTS to be addressed," as required by OP-190124.  Plaintiff was granted ten days to submit a proper grievance.  *Id*. at 3-5. Plaintiff asserts, however, that he did not receive the grievance response [Dkt. No. 101-1 at 5, ¶ 25].

On August 29, 2014, Plaintiff submitted a grievance appeal to the ARA in ARA No. 14-316, alleging that on August 7, 2014, he had attempted to file a grievance with Warden Chrisman concerning an RTS response he received on August 6, 2014.  Plaintiff complained in the ARA appeal that more than 15 working days had passed since he submitted the grievance, and he asked that Warden Chrisman be ordered to respond to the grievance.  The September 4, 2014, response from the ARA stated that Plaintiff had filed an improper grievance, because he could not appeal a non-response to a grievance.  [Dkt. No. 91-18].  The response also referenced OP-191124(V)(C), which states in pertinent part:

C.  Time Frames for the Review of Grievances

4.  If there has been no response [to a grievance] by the reviewing authority within 30 calendar days of submission, the offender may send a grievance to the administrative review authority or chief medical officer with evidence of submitting the grievance to the proper reviewing authority.  The grievance submitted to the administrative review authority or chief medical officer may

assert only that the offender's grievance was not answered.

OP-190124(V)(C)(4) [Dkt. No. 91-6 at 10].

Plaintiff argues that to the extent OP-190124(V)(C)(4) required more of him, the policy "is so opaque and confusing that any administrative remedy was effectively unavailable" [Dkt. No. 101 at 18]. Defendants allege in their reply that rather than filing a *grievance* regarding the lack of response to the August 8 grievance, Plaintiff filed a *grievance appeal* on August 29, 2014, complaining of the non-response. Defendants further point out that if Plaintiff had attempted to grieve the non-response on August 29, it likely would have been rejected as premature, because 30 days had not passed since the grievance was submitted on August 8. [Dkt. No. 105 at 5]. The Court finds that Grievance No. 14-20 was not exhausted.

After consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether Plaintiff's claims are unexhausted.

**THEREFORE,** Defendants' motion for summary judgment [Dkt. No. 92] is **GRANTED**.

**IT IS SO ORDERED** this 24th day of March 2021.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE